**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 14-113-DLB**

**CLAUDE PRIVETT, JR.**                                                                  **PLAINTIFF**

vs.                        **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting Commissioner**
**of Social Security**                                                      **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Claude Privett, Jr. filed an application for disability insurance benefits on August 26, 2011, alleging that he became disabled on February 15, 2011.[1] (Tr. 215). Plaintiff's claim was denied initially and again on reconsideration. (Tr. 138). At Plaintiff's request, an Administrative Law Judge held a hearing on October 18, 2012, and thereafter issued an unfavorable decision on December 5, 2012. (*Id.*). The ALJ's decision became

---

[1] The ALJ and the Appeals Council refer to the alleged onset date as March 31, 2011 (Tr. 7, 138), but Plaintiff's application alleged disability beginning on February 15, 2011 (Tr. 215). Plaintiff does not raise this discrepancy as a basis for reversing the ALJ's decision; therefore, any potential argument is waived and the Court will discuss it no further. *Yamin v. Comm'r Soc. Sec.*, 67 F. App'x 883, 884 (6th Cir. 2003) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir.1990)).

the final decision of the Commissioner when the Appeals Council denied review on January 22, 2014. (Tr. 8). This appeal followed and has culminated in cross-motions for summary judgment. (Docs. # 11, 15).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th

Cir. 1994).

## B.   The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 140). At Step 2, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease; bilateral carpel tunnel syndrome; and obesity. (*Id.*). However, based upon the clinical and diagnostic evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff's coronary artery disease and ACL tear were less than severe. (Tr. 141). At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> No sitting in excess of sixty to ninety minutes uninterrupted; no standing in excess of fifteen minutes uninterrupted; and no climbing of ladders, ropes or scaffolds. Additionally, the claimant is limited to no more than occasional climbing of ramps or stairs; no more than occasional stooping, kneeling, crouching or crawling; no more than frequent bilateral handling or grasping; and no concentrated exposure to vibration or extreme cold.

(Tr. 142). Based on these limitations, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 144).

The ALJ then proceeded to the final step of the sequential analysis. At Step 5, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 145). The ALJ based this conclusion on testimony from a vocation expert (VE) in response to a hypothetical question assuming an individual of Plaintiff's age, work

experience, education, and RFC. (*Id.*). Because the ALJ found that Plaintiff was capable of performing a significant number of jobs in the national economy, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. (*Id.*).[2]

**C. Analysis**

**1. *Plaintiff has waived several of his arguments***

In his motion, Plaintiff makes several conclusory arguments while including no facts, rarely citing to the record, and providing absolutely no analysis whatsoever. For example: "[t]he ALJ failed to consider the impairments suffered by the Plaintiff"; "it is clear from the medical evidence within the records that Plaintiff is severely impaired from his physical difficulties"; "hypotheticals must be reasonably based upon the substantial evidence within the record, which the ALJ failed to do"; "[Plaintiff] testified credibly . . . and the reports of the doctors substantiate his testimony." (Doc. # 11 at 3-4). Plaintiff makes these arguments without stating what impairments the ALJ failed to consider, how the medical evidence indicates that he is severely impaired, why the hypothetical questions the ALJ asked the VE were incorrect, or how the ALJ erred in finding not credible the Plaintiff's allegation of totally disabling back pain. (*See id.*)

.

---

[2] The ALJ found that Plaintiff would be able to perform work as a ticket taker (900 jobs in Kentucky/85,000 jobs in the United States); a parking lot attendant (500/68,000); and as an inspector/tester (2,000/98,000). (Tr. 145). The Appeals Council disagreed with this finding because the requirements for those positions exceeded Plaintiff's RFC. (Tr. 7). Yet, the Appeals Council adopted the ALJ's conclusion that Plaintiff was not disabled because, based on the VE's testimony in response to a hypothetical that included Plaintiff's correct RFC, the Appeals Council found that Plaintiff could still perform a significant number of jobs in the national economy; to wit, as an information clerk (1,100/84,000); officer clerk (1,000/97,000); and interviewer (700/34,000). (*Id.*; Tr. 456). Plaintiff does not raise any grounds for remand concerning this issue, and any such argument is accordingly waived. *Yamin*, 67 F. App'x at 884.

The Court has no choice but to consider these arguments waived. If the Court were to scour the record to determine if these claims have merit, it would set a precedent that plaintiffs in this district can merely file a boilerplate brief raising every possible basis for remand under the sun, in hopes that one shines through. Such a process would undermine the ALJ's role, waste judicial resources, and be completely at odds with the appropriate standard of review. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490-91 (6th Cir. 2006) ("[Plaintiff] has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on [Plaintiff's] behalf, or to undertake an open-ended review of the entirety of the administrative record . . . ."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

### 2. *The ALJ provided good reasons for not accepting the opinion of Plaintiff's treating physician, Dr. El-Nagger*

The Court will take up one issue raised in Plaintiff's motion: whether the ALJ failed to provide good reasons for not accepting the opinion of Plaintiff's treating physician, Dr. El-Naggar. (Doc. # 11 at 3-4).

A treating physician's opinion as to the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Even if the opinion is not entitled to "controlling weight," there remains a presumption, albeit a rebuttable one, "that the opinion of a treating physician is entitled to great deference." *Id.* In determining how much deference to give to the treating physician's opinion, the ALJ

must consider a number of factors, including "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

The ALJ must also "provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This rule ensures that claimants understand the disposition of their case, particularly when their own physician deems them disabled, and also permits meaningful appellate review of the ALJ's decision. *Id.*

Plaintiff first saw Dr. El-Naggar in July 2012 for back pain. (Tr. 405). After examining Plaintiff and reviewing an MRI of his lower back, Dr. El-Naggar recommended physical therapy, exercise, heat, and epidural steroid injections. (Tr. 406, 413). Dr. El-Naggar ultimately opined that Plaintiff was "totally and permanently disabled." (Tr. 406). The ALJ gave that opinion "negligible weight," but provided good reasons. (Tr. 144).

First and foremost, the ALJ properly recognized that Dr. El-Naggar's "opinion regarding [Plaintiff] being permanently disabled is an issue specifically reserved . . . to the Commissioner." (*Id.*); 20 C.F.R. § 404.1527(d)(1) ("Opinions on [whether you are disabled] . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner."); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) ("[I]n any event, the opinion in the letter is not a medical opinion at all, but a legal conclusion—that [Claimant] is disabled. As such, the ALJ was not required to give it any weight."). This reason alone supports the weight the ALJ gave to Dr. El-Naggar's opinion.

Second, the ALJ noted that Dr. El-Naggar's opinion was "inconsistent with [Plaintiff's] testimony regarding his ability to sit, stand and lift," and was "not supported by the longitudinal evidence of record." (Tr. 144). Specifically, Plaintiff testified that he could carry a gallon of milk, sit uninterrupted for ninety minutes, and stand uninterrupted for fifteen minutes, which the ALJ found "does not support his allegations of totally disabling back pain." (Tr. 143). With respect to the longitudinal evidence, the ALJ recognized that Plaintiff "underwent a nerve conduction study on his bilateral extremities in May 2011 that revealed *normal* nerve conduction velocities results." (*Id.*) (emphasis added). Moreover, "the record does not indicate many neurological abnormalities other than a positive straight-leg test, [and there is] no indication of surgical intervention." (*Id.*). The ALJ further observed that Plaintiff "reported back pain after his January 2006 motor vehicle accident, [but] . . . did not seek any recent treatment for his back until [] May 2011." (*Id.*). The ALJ's explanation that Dr. El-Naggar's opinion is inconsistent with other evidence in the record provides a good and sufficient reason to give that opinion negligible weight. *See* 20 C.F.R. § 404.1527(c)(2), (4); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010).

### III. CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows;

(1)   The decision of the Commissioner is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**;

and

(4)   A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 20th day of March, 2015.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\14-113 Privett MOO.wpd